**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SERGEI KOVALEV,** | : | |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | **CIVIL NO. 22-3551** |
| | : | |
| **NAZARETH HOSPITAL; TRINITY** | : | |
| **HEALTH OF THE MID-ATLANTIC** | : | |
| **REGION; MICHAEL MAGRO;** | : | |
| **PRAZAD MATHEW; RONALD** | : | |
| **SHAPIRO; CAROL SNYDER; and** | : | |
| **ADDITIONAL DOES 1-15,** | : | |
| *Defendants*. | : | |

**MEMORANDUM**

Scott, J.                                                                                    May 22, 2024

*Pro se* Plaintiff Sergei Kovalev brings this action against Defendants Nazareth Hospital, Trinity Health of the Mid-Atlantic Region, Michael Magro, D.O. – President of Nazareth Hospital, Prazad Mathew, Ronald Shapiro, Carol Snyder (collectively, "Nazareth Defendants") and additional Does 1–15 claiming that he was assaulted, intimidated, and harassed on July 16, 2022 after he refused to put his cell phone in a plastic container to go through the x-ray machine at the security checkpoint area in the Nazareth Hospital Emergency Department. Presently before the Court are Nazareth Defendants' Motion to Dismiss (ECF No. 23) and their Supplemental Motion to Dismiss (ECF No. 40). For the reasons that follow, Nazareth Defendants' Motions to Dismiss will be granted in part, and this Court will dismiss Plaintiff's Amended Complaint without prejudice. An appropriate Order will follow.

1

## I.   **BACKGROUND**[1]

Plaintiff identifies himself as "a White person of Eastern European ethnicity" who speaks with an accent. ECF No. 19, Am. Compl. ¶ 59. As described below, the allegations in his Amended Complaint concern his experience at the Nazareth Hospital Emergency Department on July 16, 2022. *See generally id.* On that day, Plaintiff suffered a "medical emergency" and went to the Nazareth Hospital Emergency Department in order to receive emergency medical examination and treatment. *Id.* ¶¶ 34–35.

When he arrived at the Emergency Department, Plaintiff approached the security checkpoint area, which was attended by two security guards, Defendants Prazad Mathew and Ronald Shapiro, who were both employed by Nazareth Hospital/Trinity Health of the Mid-Atlantic. *Id.* ¶¶ 39–41. At the security checkpoint, Plaintiff placed his small briefcase on the examining table to be scanned in the x-ray machine. *Id.* ¶ 42. Plaintiff then got his cell phone out of his pocket, at which point "both security guards started shouting loudly that Plaintiff must place his telephone in a plastic container." *Id.* ¶ 43. Plaintiff "politely" declined to do so, stating that the "containers are infected by multiple uses by other patients and by their personal items" and told the security guards that, instead, he would place his phone into his own briefcase to be x-rayed, which he then proceeded to do. *Id.* ¶¶ 45–46.

After hearing Plaintiff's accent when he told the security guards that he would not put his telephone into a container, the security guards started loudly shouting at Plaintiff to "go away," to "find another place for treatment," shouting that they would "not let [him] in," and would "throw" him out and call the police on him. *Id.* ¶¶ 54–55, 59. Plaintiff did not respond to these "attacks and assaults" but rather, proceeded to walk through the metal detector and pick up his already x-rayed

---

[1]     The Court draws these factual allegations from Plaintiff's Amended Complaint. ECF No. 19.

briefcase, which contained his cell phone. *Id.* ¶ 60. Plaintiff then walked to the registration window located near the security checkpoint "in silence," despite the fact that Defendant Shapiro continued to assault and harass Plaintiff by following him. *Id.* ¶¶ 61–62.

When he arrived at the registration window, Plaintiff provided his identification to Defendant Carol Snyder, who was working as the Emergency Department Registrar. *Id.* ¶ 63–64. He also told Defendant Snyder that "he would like to file a complaint against both security guards, because he was attacked without any reason and was subject to an assault by Nazareth Hospital's two security guards." *Id.* ¶¶ 63–64. At that point, Defendant Shapiro "approached Plaintiff again, in front of the registration window and started shouting loudly to . . . [Defendant Snyder] not to tell Plaintiff anything." *Id.* ¶ 65. Defendant Shapiro then shouted that he would "throw" Plaintiff out of the Emergency Department and would "be calling the police to throw Plaintiff out." *Id.*

Plaintiff did not respond to Defendant Shapiro's shouting, but rather, told Defendant Snyder that "she is a witness of the fact that security guards are attacking, harassing, and assaulting Plaintiff" and asked her to provide the names of the security guards. *Id.* ¶¶ 66, 68. In response, Defendant Snyder "stated that she will not be a witness of anything" and refused to provide the names of both security guards. *Id.* ¶¶ 67–68. Defendant Snyder also refused to provide her own name when requested by Plaintiff. *Id.* ¶ 69. Plaintiff then asked Defendant Snyder to call any supervisor or anyone in charge of the Emergency Department, to which Defendant Snyder falsely responded, "that they do not have a supervisor" and "they do not have anybody in charge." *Id.* ¶¶ 70–73, 79.

"Without communicating with any security guard, Plaintiff received his registration plastic bracelet and sat down in the waiting area." *Id.* ¶ 82. While silently sitting in the waiting area, Defendants Mathew and Shapiro "were continuing with their intimidation and harassment by

walking back and forth next to Plaintiff . . . about 10-15 times each[.]" *Id.* ¶ 83. Plaintiff was then "invited into the examination/treatment area," and while he was sitting silently in the hallway of this area with 2-3 other patients, multiple Nazareth Hospital security guards (not Defendants Mathew and Shapiro) intentionally walked next to Plaintiff approximately 10 or more times. *Id.* ¶ 85.

As a result of the foregoing events, Plaintiff alleges that he "has been severely traumatized, suffered and continues to suffer from personal physical sickness and mental anguish therefrom, severe emotional distress, psychological trauma, humiliation, apprehension, alienation, grief, fear of public places, loss of enjoyment of life, reduced quality of life, injury to his dignity, injury to his health, financial losses, and many other harms and damages[.]" *Id.* ¶ 96. Plaintiff requests, *inter alia,* "punitive damages in the amount of at least Ten Million Dollars," and injunctive relief. *Id.* ¶¶ 114–28 & pp. 105–06.

Based on these facts, on August 2, 2022, Plaintiff initiated this lawsuit by filing a Complaint in the Philadelphia County Court of Common Pleas. *See* ECF No. 1 ¶ 3. Nazareth Defendants then removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446 on September 6, 2022. *See generally* ECF No. 1. After removing the case, Nazareth Defendants filed a Motion to Dismiss Plaintiff's Complaint (ECF No. 4), which was denied as moot when the Court granted Plaintiff's Motion to File an Amended Complaint. ECF No. 18.

Accordingly, on November 15, 2022, Plaintiff filed the operative Amended Complaint. ECF No. 19. In his Amended Complaint, Plaintiff brings the following twenty-two (22) claims:

- Count I: Assault – Civil Claims for Intimidation and Threats of Physical Attack;
- Count II: Assault – Civil Claims for Intentional Denial of Medically Necessary Services;
- Count III: Assault by Harassment or Independent Claim for Harassment;
- Count IV: Assault by Ethnic Intimidation or Independent Claim for Ethnic Intimidation;

- Count V: Civil Conspiracy – Conspiracy to Deny Medical Services, to Injure and to Defraud;
- Count VI: Pennsylvania Civil Rights Violations – Violation of 42 Pa. C.S. § 8309;
- Count VII: Violation of Plaintiff's Civil Rights Pursuant to 42 U.S.C. § 1983;
- Count VIII: Violations of Rights Secured by the Free Exercise Clause of the First Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983;
- Count IX: Violations of Rights Secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution – Plaintiff's Right to Safety and Bodily Integrity Pursuant to 42 U.S.C. § 1983;
- Count X: Failure to Train, Discipline, and Supervise Pursuant to 42 U.S.C. § 1983;
- Count XI: Discrimination in Violation of 42 U.S.C. § 2000a(a) *et seq.*;
- Count XII: Discrimination in Violation of 42 U.S.C. § 1981;
- Count XIII: Conspiracy in Violation of 42 U.S.C. § 1985;
- Count XIV: Violation of the Emergency Medical Treatment and Labor Act (EMTALA), also known as 42 U.S.C. § 1395dd (Examination and Treatment for Emergency Medical Conditions);
- Count XV: Ordinary Negligence;
- Count XVI: Negligence Per Se;
- Count XVII: Gross Negligence;
- Count XVIII: Negligent Infliction of Emotional Distress;
- Count XIX: Intentional Infliction of Emotional Distress;
- Count XX: Reckless Endangerment;
- Count XXI: Defamation, Defamation Per Se, and Defamation by Implication; and
- Count XXII: Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1, *et seq.*

On November 28, 2022, Nazareth Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 23), to which Plaintiff filed an Opposition (ECF No. 28). Thereafter, on February 22, 2023, this case was reassigned from the Honorable Wendy Beetlestone to this jurist. ECF No. 29. Then, on April 10, 2023, Nazareth Defendants filed a Supplemental Motion to Dismiss (ECF No. 40), to which Plaintiff filed an Opposition (ECF No. 41). Accordingly, the Motions are ripe for resolution.

## II.   **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility

means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)). As Plaintiff is proceeding *pro se*, the Court must construe the allegations in the Amended Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

## III.   <u>DISCUSSION</u>

In his Amended Complaint, Plaintiff alleges the following eight federal claims: (Count VII) Violation of Plaintiff's Civil Rights Pursuant to 42 U.S.C. § 1983; (Count VIII) Violations of Rights Secured by the Free Exercise Clause of the First Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983; (Count IX) Violations of Rights Secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution – Plaintiff's Right to Safety and Bodily Integrity Pursuant to 42 U.S.C. § 1983; (Count X) Failure to Train, Discipline, and Supervise Pursuant to 42 U.S.C. § 1983; (Count XI) Discrimination in Violation of 42 U.S.C. § 2000a(a) *et seq.*; (Count XII) Discrimination in Violation of 42 U.S.C. § 1981; (Count XIII) Conspiracy in Violation of 42 U.S.C. § 1985; (Count XIV) Violation of the Emergency Medical Treatment and Labor Act (EMTALA) also known as 42 U.S.C. § 1395dd (Examination and Treatment for Emergency Medical Conditions). As detailed below, the Court finds that Plaintiff

has failed to state any federal claim and, because the Court declines to exercise supplemental jurisdiction over any state law claim, Plaintiff's Amended Complaint will be dismissed.

A.    **Counts VII–X: Plaintiff's 42 U.S.C. § 1983 Claims**

In Counts VII through X, Plaintiff alleges four separate § 1983 claims. Am. Compl. ¶¶ 233–80. "To pursue a constitutional claim under 42 U.S.C. § 1983, a plaintiff 'must establish that [he] was deprived of a federal constitutional or statutory right *by a state actor*.'" *Dophin v. Bank of Am. Mortg. Co.*, 641 F. App'x 131, 133 (3d Cir. 2016) (quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)). "Although there is no 'simple line' between state and private actors . . .[the Third Circuit has] explained that [t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach*, 589 F.3d at 646 (internal quotation marks and citations omitted). To make such a determination, the Third Circuit has "outlined three broad tests . . . to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (internal quotation marks and citation omitted).

Here, Plaintiff does not dispute that Defendants Nazareth Hospital and Trinity Health of the Mid-Atlantic Region are private entities. *See generally* Am. Compl. Moreover, Plaintiff does not dispute that the individually-named-employee Defendants were not employed by the government, but rather by the private entities. *Id.* Instead, "Plaintiff contends that [Nazareth Defendants] . . . should be construed as being an arm of the state, at least for purposes of the First and Fourteenth Amendments, and 42 U.S.C. § 1983 because of state and federal tax exemptions

that both Defendants receive, because of receipt by the Hospital Defendants of state and federal funds pursuant to an all-encompassing state plan for the care and treatment of all state citizens, because of exhaustive state regulation which governs in great detail the day-to-day operation of the Hospital Defendants, and because the Hospital Defendants are expressed through the public interest." Am. Compl. ¶ 236.

Plaintiff's contention is wrong. "Private hospitals are not transformed into state actors merely because they received federal and state funding and are subject to accompanying regulations." *White v. Willingboro Twp.*, No. 18-cv-10964, 2020 WL 3604091, at *7 (D.N.J. July 2, 2020) (citation omitted). In fact, Plaintiff's "argument has been considered and repeatedly rejected by the Supreme Court in similar cases." *Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 293 (3d Cir. 2010) (collecting cases). Accordingly, as Plaintiff has failed to establish the necessary "close nexus" between the State and Nazareth Defendants' actions so that the actions of the latter may be fairly treated as that of the State itself, all of Plaintiff's § 1983 claims fail. Thus, the Court will dismiss Count VII through Count X.

### B.      Count XI: Discrimination in Violation of 42 U.S.C. § 2000a(a) *et seq.*

In Count XI, Plaintiff asserts a claim under 42 U.S.C. § 2000a(a) *et seq.* alleging that "Defendants denied Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations for receiving medically necessary services because of his ethnicity or other characteristics, such as race, and/or gender when Defendants' employees intentionally interfered with Plaintiff's enjoyment of his civil rights, but the same employees never subjected to the same abuses and mistreatments all other patients." Am. Compl. ¶¶ 281–92.

To state a claim under 42 U.S.C. § 2000a, a plaintiff must plead "that he or she (1) is a member of a protected class; (2) attempted to exercise the right to full benefits and enjoyment of

a place of public accommodation; (3) was denied those benefits and enjoyment; and (4) was treated less favorably than similarly situated persons who are not members of the protected class." *Shumate* v. *Twin Tier Hosp., LLC*, 655 F. Supp. 2d 521, 537 (M.D. Pa. 2009) (citation omitted). "Section 2000a sets forth a comprehensive list of establishments that qualify as a place of public accommodation and in so doing excludes from its coverage those categories of establishments not listed." *Castillo v. Receptionist for Cathy Polcinik*, No. 5:15-CV-02296, 2016 WL 4124057, at *3 (E.D. Pa. Aug. 3, 2016) (internal quotations and citation omitted). Included within the list of qualifying establishments "are places that provide lodging to travelers, restaurants and other facilities that sell food for consumption on the premises, and places of exhibition and entertainment." *Id.* Not included in this list are medical facilities such as hospitals. *Id.* Accordingly, numerous courts across the country have held that a hospital does not qualify as a place of public accommodation. *See Ramirez v. Adventist Med. Ctr.*, No. 3:17-CV-831, 2017 WL 4798996, at *5–6 (D. Or. Oct. 24, 2017) (collecting cases). As Plaintiff has not included any allegations in his Amended Complaint that would bring Nazareth Hospital within the definition of a "public accommodation," this claim fails.

Moreover, even if this Court were to find Defendant Nazareth Hospital to be a place of public accommodation, Plaintiff has not put forth any allegations that suggest he was discriminated against on the basis of his race or ethnicity. Plaintiff simply jumps to the conclusion that "[m]ultiple Nazareth Hospital employees agreed and conspired to subject Plaintiff to their abuses, harassment, illegal and discriminative activities, because of Plaintiff's ethnicity reflected in being a White person of the Eastern European ethnicity who is speaking with an accent." Am. Compl. ¶ 88. But Plaintiff fails to allege any facts "plausibly suggesting any discriminatory animus (*e.g.*, suggestive statements directed toward him, better treatment of similarly situated customers outside

of protected class)." *Scott v. Police & Fire Fed. Credit Union*, No. 1:22-CV-00988, 2022 WL 17547279, at *3 (D.N.J. Dec. 9, 2022).  Although Plaintiff is entitled to a relaxed pleading standard because he is proceeding *pro se*, the Court is not required to "credit a *pro se* plaintiff's bald assertions or legal conclusions." *Id.* (citations omitted).  Also dooming this claim is the fact that Plaintiff has failed to allege that Nazareth Defendants actually denied him any public accommodation, as there are no averments that the care and treatment provided to Plaintiff were inadequate.

Therefore, Count XI fails to state a claim and will be dismissed.

### C.    Count XII: Discrimination in Violation of 42 U.S.C. § 1981

In Count XII, Plaintiff asserts a claim under 42 U.S.C. § 1981, alleging that Nazareth Defendants interfered with his ability to contract for emergency medical services because of his "ethnicity (or race and gender)." Am. Compl. ¶¶ 293–315. Section 1981 provides that:

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). "In order to state a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts[.]" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (internal quotations and citation omitted).

Here, Plaintiff has not put forth any factual allegations to support a finding of intent to discriminate on the basis of race by any of the Defendants. While Plaintiff repeatedly asserts his

Eastern European origins and that he speaks with an accent, he fails to plausibly allege that anything other than his failure to place his cell phone in a bin at the security checkpoint area led to the Defendants' employees "harass[ing], threaten[ing] and attempt[ing] to remove him" from the Emergency Department. Am. Compl. ¶ 302. Notably absent from the Amended Complaint is even one instance of a defendant indicating "[Plaintiff] was singled out on account of his race or ethnicity such that this Court could plausibly infer racial animus." *Kovalev v. Home Depot U.S.A., Inc.*, No. CV 22-465, 2023 WL 2588549, at *11 (E.D. Pa. Mar. 21, 2023), *aff'd,* No. 23-1759, 2023 WL 7179467 (3d Cir. Aug. 23, 2023). Accordingly, Count XII fails to state a claim and will be dismissed.

**D.     Count XIII: Conspiracy in Violation of 42 U.S.C. § 1985**

In Count XIII, Plaintiff asserts a claim under 42 U.S.C. § 1985, alleging that Defendants "conspired to deprive Plaintiff of the equal protection of the law and/or the equal privileges and immunities provided under the law." Am. Compl. ¶¶ 316–28. Section 1985 provides:

> [i]f two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). "To establish a claim under § 1985(3), a plaintiff must show (1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property, or the deprivation of any right." *Whitehead v. Wetzel*, 720 F. App'x 657, 662 (3d Cir. 2017) (internal quotations and citation omitted).

Here, as discussed above in this Court's analysis of Plaintiff's § 1981 claim, Plaintiff has not alleged any facts that would support a finding that Nazareth Defendants were motivated by a racial or class-based discriminatory animus designed to deprive Plaintiff of equal protection of the laws. Plaintiff's conclusory allegations of the elements of this claim are entirely unsupported by the facts. Accordingly, Count XIII fails to state a claim and will be dismissed.

E.     **Count XIV: Violation of the Emergency Medical Treatment and Labor Act (EMTALA), 42 U.S.C. § 1395dd**

In Count XIV, Plaintiff alleges that Nazareth Defendants, by attempting to prevent Plaintiff's entrance into the Emergency Department and threatening him with infliction of physical injuries, violated EMTALA. Am. Compl. ¶¶ 329–52.

"Congress enacted EMTALA in the mid–1980s based on concerns that, due to economic constraints, hospitals either were refusing to treat certain emergency room patients or transferring them to other institutions"—a practice known as "patient dumping." *Torretti v. Main Line Hosps., Inc.*, 580 F.3d 168, 173 (3d Cir. 2009) (citations omitted). "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner." *Id.* "EMTALA does not create a federal cause of action for malpractice, but it does allow private plaintiffs to sue when hospitals fail to provide an appropriate screening and when hospitals fail to stabilize an emergency medical condition." *Foster v. Klasko*, No. 20-cv-1905, 2020 WL 6255372, at *1 (D.N.J. Oct. 23, 2020) (citation omitted); *see also Torretti*, 580 F.3d at 174 (explaining that EMTALA "[l]iability is determined independently of whether any deficiencies in the screening or treatment provided by the hospital may be actionable as negligence or malpractice . . . as the statute was aimed at disparate patient treatment").

Under EMTALA, a hospital has multiple obligations: "(a) appropriate medical screening, (b) stabilization of known emergency medical conditions and labor, and (c) restrictions on transfer

of unstabilized individuals to outside hospital facilities." *Torretti*, 580 F.3d at 172–73 (citations

omitted). In order "to state an EMTALA failure-to-screen claim, the plaintiff must allege that: (1)

the patient had an emergency medical condition; and (2) the hospital did not screen the patient in

the same way it screens other patients presenting with similar symptoms." *McClure v. Parvis*, 294

F. Supp. 3d 318, 324 (E.D. Pa. 2018). On the other hand, in order to state an EMTALA failure-to-

stabilize claim, a plaintiff must allege that he "(1) had an emergency medical condition; (2) the

hospital actually knew of that condition; and (3) the [plaintiff] was not stabilized before being

transferred." *Foster*, 2020 WL 6255372, at *2 (citation omitted). Under EMTALA, an "emergency

medical condition" is defined as:

> (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
>
> (i) placing the health of the individual . . . in serious jeopardy,
>
> (ii) serious impairment to bodily functions, or
>
> (iii) serious dysfunction of any bodily organ or part . . . .

42 U.S.C. § 1395dd(e)(1).

Plaintiff's Amended Complaint fails to plausibly state an EMTALA claim. First, Plaintiff

has not put forth facts demonstrating that he meets the definition of having an "emergency medical

condition." Plaintiff's Amended Complaint puts forth conclusory allegations, alleging, for

example, that he was "gravely ill" Am. Compl. ¶¶ 1, 56, that he "suffered a medical emergency

and needed to receive emergency medical examination and treatment," Am. Compl. ¶ 34, and that

he came into the hospital "in severe physical distress accompanied with excruciating pains." Am.

Compl. ¶ 39. However, Plaintiff fails to explain exactly what "emergency medical condition" he

was experiencing when he went to Nazareth Hospital. As Plaintiff does not put forth factual

allegations concerning his reason for being in the emergency room, Plaintiff has not sufficiently alleged that he meets the definition of having an "emergency medical condition."

Even putting aside the conclusory assertions of his "emergency medical condition," Plaintiff has failed to allege that the Hospital did not screen or stabilize him. Although Plaintiff alleges that Defendants "were trying to prohibit Plaintiff's entrance into the Emergency Department," Am. Compl. ¶ 337, Plaintiff does not claim he was not screened or stabilized. From what the Court can deduce, despite the alleged issues at security, Plaintiff was able to check into the emergency room and receive treatment. There are zero allegations that patients presenting with similar symptoms as Plaintiff were screened in a different way nor are there any allegations that Plaintiff's condition was not stabilized. Accordingly, Plaintiff has failed to plead the necessary elements to state a claim under EMTALA and, thus, Count XIV will be dismissed.

### F.    State Law Claims

Plaintiff's remaining claims are the following state law claims: (Count I) Assault – Civil Claims for Intimidation and Threats of Physical Attack; (Count II) Assault – Civil Claims for Intentional Denial of Medically Necessary Services; (Count III) Assault by Harassment or Independent Claim for Harassment; (Count IV) Assault by Ethnic Intimidation or Independent Claim for Ethnic Intimidation; (Count V) Civil Conspiracy – Conspiracy to Deny Medical Services, to Injure and to Defraud; (Count VI) Pennsylvania Civil Rights Violation – Violation of 42 Pa. C.S. § 8309; (Count XV) Ordinary Negligence; (Count XVI) Negligence Per Se; (Count XVII) Gross Negligence; (Count XVIII) Negligent Infliction of Emotional Distress; (Count XIX) Intentional Infliction of Emotional Distress; (Count XX) Reckless Endangerment; (Count XXI) Defamation, Defamation Per Se, and Defamation by Implication; and (Count XXII) Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1,

*et seq.* Because the Court has dismissed Plaintiff's federal claims, the Court will not exercise supplemental jurisdiction over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "complete diversity between all plaintiffs and all defendants, even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, no plaintiff [may] be a citizen of the same state as any defendant." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (internal quotations and citations omitted). For purposes of diversity jurisdiction, an individual is deemed to be a citizen of the state where he is domiciled. *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008) (citation omitted). Here, the Plaintiff is a citizen of Pennsylvania and Plaintiff alleges that "[a]ll Defendants were conducting their business and employment in the State of Pennsylvania, and are located in the same State." Am. Compl. ¶ 30. Thus, it appears to the Court that complete diversity of citizenship is lacking, and therefore this Court does not have subject matter jurisdiction over any state law claims Plaintiff may be raising. Accordingly, Plaintiff's state law claims will be dismissed.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court will dismiss Plaintiff's Amended Complaint. This dismissal is without prejudice to Plaintiff's right to file a second amended complaint within thirty (30) days in the event that he can cure the defects noted above. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate Order follows.